

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

|  | *One Pierrepont Plaza* |
|---|---|
| F.#2005R01365 | *Brooklyn, New York  11201* |
| *Mailing Address:* | *147 Pierrepont Street*<br>*Brooklyn, New York  11201* |

June 15, 2006

<u>Via Hand Delivery and ECF</u>

Honorable Edward R. Korman
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Noureddine Malki
> <u>Criminal Docket No. 06-216 (ERK)</u>

Dear Judge Korman:

The government respectfully submits this letter concerning the defendant's motion to suppress classified documents and other materials that the FBI obtained from a consent search of the defendant's Brooklyn apartment, as well as statements that the defendant made to FBI agents and a Department of Defense officer in Iraq in September 2005.  There are two issues before the Court: (1) whether the FBI obtained proper consent to search the apartment; and (2) whether the defendant's statements to the agents were improperly coerced.

With respect to the search, the government will establish at the suppression hearing that the defendant gave oral and written consent to search his computer and hard drive in his apartment, and that the defendant subsequently instructed the custodian of his apartment, Vincent Alston, to give consent to the investigators to search and seize anything else in the apartment.  Mr. Alston then informed the investigators of the defendant's instruction, and signed a written consent to search form.  <u>See</u> Exhibit A.

With respect to the defendant's statements in Iraq, the defendant has already pleaded guilty to making false statements to the FBI agents during this interview, and never claimed then that the statements were involuntary or coerced.  Further, on the date of the interview, in a written consent form, the defendant expressly stated that "I give this consent freely.  No threats

2

have been made against me."  See Exhibit B.  Now, however, defense counsel asserts – without providing any supporting affidavit from the defendant[1] – that the defendant was improperly coerced into making the statements because, according to the defendant, the FBI agents conducting the interview told him that he would be "sent home" if he did not answer their questions. The defendant claims that he construed this statement to mean that he would be fired.

As the government would establish at a hearing, the defendant was never told that he would be "sent home," fired, suspended or otherwise disciplined if he failed to answer any questions.  The defendant never expressed any reservation about being interviewed and was eager to perpetuate the lies that led to his classified security clearance.

In any event, the defendant is not even entitled to a suppression hearing on this issue because, even under the defendant's own current version of the facts, there would be no coercion giving rise to the suppression of his statements as a matter of law.  See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967)(suppression hearing available only if there is a "factual issue to be resolved").   The defendant relies exclusively on a 1967 Supreme Court decision, Garrity v. State of New Jersey, 385 U.S. 493 (1967).  There, investigators warned the defendant police officers, who were being investigated for fixing traffic tickets, that their refusal to answer questions would subject them to termination under a state statute providing that refusing to answer questions relating to employment was grounds for dismissal of any public employee.  Id. at 494.  Faced with this dilemma, the defendants agreed to answer questions, and proceeded to incriminate themselves.  The Supreme Court held that the statements could not be used in a subsequent criminal

---

[1]  Courts routinely require that specific allegations in support of a suppression motion be based on personal knowledge. See, e.g., United States v. Simpkins, 1996 WL 629567 (E.D.N.Y. 1996) (Nickerson, J.) (suppression motion denied because "defendant has failed to provide an affidavit based on her own personal knowledge"); United States v. Clement, 1995 WL 151786 (E.D.N.Y. 1995) (Johnson, J.) (affidavit in support of suppression motion is "insufficient if it is not based on personal knowledge"); United States v. Brumby, 1992 WL 373686 (E.D.N.Y. 1992) (Hurley, J.) (defendant's "failure to submit an affidavit based on personal knowledge bars his application for a hearing on these suppression issues"), aff'd, 23 F.3d 47 (2d Cir. 1994).

3

proceeding against the defendants because the statutory scheme "exerted such pressure upon an individual as to disable him from making a free and rational choice." Id. at 497.

Courts have consistently declined to extend the Garrity decision beyond its narrow facts. In United States v. Indorato, 628 F.2d 711, 716 (1st Cir. 1980), for example, the court refused to apply Garrity where there was no explicit threat of dismissal and no statute or municipal ordinance providing for such dismissal. See id. ("In all of the cases flowing from Garrity, there are two common features: (1) the person being investigated is explicitly told that failure to waive his constitutional right against self-incrimination will result in his discharge from public employment (or a similarly severe sanction imposed in the case of a private citizen); and (2) there is a statute or municipal ordinance mandating such procedure."). In Diebold v. Civil Service Commission of St. Louis County, 611 F.2d 697 (8th Cir. 1979), the court found insufficient coercion to make incriminating statements to an administrative committee, even though failure to do so "virtually guaranteed" job termination. In United States v. Stein, 233 F.3d 6 (1st Cir. 2000), the court found that the defendant's reasonable fear of disbarment upon failure to make incriminating statements to the Board of Bar Overseers was insufficient coercion. Finally, in Sanney v. Montanye, 500 F.2d 411, 415 (2nd Cir. 1974), the Second Circuit held that even where the defendant was explicitly threatened with dismissal, the job in question was not valuable enough for the threat to constitute disabling pressure.

Here, the defendant's own version of the facts do not come close to rising to the level of coercion that would entitle the defendant to the suppression of his statements under Garrity: there is no statute or regulation that would have penalized the defendant for refusing to answer questions, the defendant was not a public employee and the interviewing agents had no power to fire him, and the defendant does not even claim that there was an express threat of termination.

First, unlike Garrity or Uniform Sanitation Men Assn., Inc. v. Commissioner of Sanitation of the City of New York, 392 U.S. 280 (1968), there was no federal or state statute or even internal regulation requiring the defendant to cooperate or face adverse job consequences.

Second, the defendant was employed by a private company, Titan Corporation, which was operating under a contract with the federal government. Obviously, the government agents conducting the interview had no authority to terminate his

4

employment with Titan, and the defendant had no reason to think otherwise.

Finally – and critically – the fact that the defendant does not allege any explicit threat further distinguishes this case from <u>Garrity</u>. According to the defendant, he was told that he would be "sent home," and inferred that this meant that he would be fired. In <u>Indorato</u>, the First Circuit refused to find coercion where there was no explicit threat of job termination made to the police officer defendant. The officer's claim that he inferred the threat from the investigator's comments based on his knowledge of police department policies regarding insubordination, was dismissed by the court as "subjective fears . . . [in]sufficient to bring him within <u>Garrity</u>'s cloak of protection." 628 F.2d at 716. Here, the defendant's inference that being "sent home" would lead to job termination was similarly subjective. Because Titan employs Arabic linguists in contracts around the world, including in the United States, such an inference would have been based on assumptions about Titan's internal policies. Whether or not these assumptions are correct, they do not give rise to a finding of coercion.

The fact of the matter is that the defendant was not coerced into making statements under the threat of termination. His decision to talk was a voluntary one based on his own self-interest. The defendant acknowledged this in writing. <u>See</u> Exhibit B. The defendant made the calculated decision that he should try to fool the agents about his true identity - just as he had on INS forms and in his application to become a translator in Iraq.

5

Accordingly, the defendant's motion to suppress his statements in Iraq should be denied without a hearing. <u>See</u> <u>United States v. Culotta</u>, 413 F.2d 1343, 1346 (2d Cir. 1969) (trial court is only required to grant such a hearing when the movant's affidavit contains specific factual allegations which, if proven at a hearing, would require granting the relief requested).

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney

By: _____

Jeffrey H. Knox
Assistant U.S. Attorney

cc: Mildred Whalen, Esq. (By fax and ECF)