

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KTC:JHK
F.#2005R01365

*One Pierrepont Plaza*

*Brooklyn, New York 11201*

*Mailing Address:* 147 Pierrepont Street
*Brooklyn, New York 11201*

July 31, 2006

Via Hand Delivery and ECF

Honorable Edward R. Korman
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                Re:   United States v. Noureddine Malki
                      Criminal Docket No. 06-216 (ERK)

Dear Judge Korman:

        The government respectfully submits this letter
concerning the defendant's motion to suppress classified
documents and other materials that the FBI obtained from a
consent search of the defendant's Brooklyn apartment.  As
established at the suppression hearing on June 16, 2006, the
defendant gave oral and written consent to search his computer
and hard drive in his apartment, and subsequently instructed the
custodian of his apartment, Vincent Alston, to give consent to
the investigators to search and seize "anything" else in the
apartment.  Mr. Alston then informed the investigators of the
defendant's instruction, and signed a written consent to search
form.

        At the conclusion of the suppression hearing, the Court
found that Mr. Alston did, in fact, inform the agents that the
defendant had instructed him to tell the agents that they could
take "anything" from the apartment, and that the agents
reasonably construed this statement as being a consent to search
the apartment:

                As far as the search and seizure goes, I
                don't believe [Alston's] testimony here that
                he didn't remember what he said.  I credit
                the testimony of the agents, that among other
                things, that he told him to let them have
                anything that they want.  And in my view, the

2

agents could have combined with his execution of his consent to search, the agents could have construed that reasonably as being a consent to search the apartment.

Transcript of Suppression Hearing ("Tr.") at 72.

After repeated requests from defense counsel, the Court agreed to accept a letter addressing the question further. Tr. at 72-74. As discussed more fully below, however, the defense cited no precedent remotely suggesting that law enforcement cannot reasonably rely on a third party's representation that the defendant expressly directed the third party to give consent to search. As the Court correctly observed, "you could easily say that [Alston] had apparent authority if not actual authority and then [the agents] could reasonably rely on it." Tr. at 74.

First, Mr. Alston had actual authority to consent to the search. Under the Second Circuit's two-prong test in U.S. v. Davis, 967 F. 2d 84, 87 (2d Cir. 1992), actual authority exists if the third party had "access to the area searched" and "either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." Here, with respect to the first prong, the Court already found that Mr. Alston "had access" to the apartment, as the defendant explicitly instructed him to retrieve the key for the apartment and allow the agents to enter. Tr. at 74. With respect to the second prong, Mr. Alston had "permission to gain access." In their letter, the defense assumes that the defendant did not give permission to Mr. Alston to inform the agents that they could take anything. The evidence at the suppression hearing showed otherwise, however. As Mr. Alston testified in the grand jury three weeks after the search of the apartment:

Q:    Did Mr. Nour give you instructions?

A:    Yes.

Q:    What were those instructions?

A:    He told me that they wanted his hard drive, the portable hard drive that plugged into the laptop. And then he said that there was an old computer there. Let them have that. As a matter of fact, let them have anything.

Q:    Seeking clarification, as a matter of

                    fact, let them have anything?

          Q:    And did you convey those instructions to
                the agents?

          A:    Yes.

          Q:    In essence, that they could have
          anything?

          A:    Yes.

Tr. at 57-59.

        The defendant did not testify at the suppression hearing or submit an affidavit denying that he gave this instruction to Mr. Alston.  Moreover, Mr. Alston had no motive to fabricate this event.  While Mr. Alston attempted to backtrack from his grand jury testimony at the suppression hearing, first denying that he told the agents that "they could have anything" and then stating that he could not remember what the defendant had said to him or what he [Alston] had said to the agents, Mr. Alston subsequently conceded that he testified truthfully in the grand jury and that his recollection was better at the time of his grand jury testimony – three weeks after the event – than it was at the suppression hearing – more than seven months after the event.  Tr. at 70-71.  Further, as discussed, the Court found that, "I don't believe [Alston's] testimony here that he didn't remember what he said."  Accordingly, the evidence at the suppression hearing established that the defendant had instructed Mr. Alston to give full consent to the agents and, therefore, Mr. Alston had actual authority to consent to a full search of the apartment.  The inquiry should end there.  See Illinois v. Rodriguez, 497 U.S. 177, 189 (1990) (examination of reasonableness is only relevant where the third party did *not* have actual authority: "If (the officers' belief was unreasonable), then the warrantless entry without further inquiry is unlawful *unless actual authority exists.*") (emphasis added).

        Second, even assuming, *arguendo*, that the defendant did not instruct Mr. Alston to "let them have anything" and Mr. Alston inexplicably fabricated this conversation when Mr. Alston talked to the agents, the agents nonetheless reasonably relied on Mr. Alston's assertions.  In Rodriquez, the Court held that third party consent is legally sufficient where law enforcement officials reasonably believed that the consenting party had the

4

necessary authority, even where later evidence proves this to be untrue.  497 U.S. at 186.  The Court set an objective test for determining whether the officers' belief was reasonable, using the standard of a "man of reasonable caution" in possession of the facts available to the officer at the time.  Id. at 189.  The Court then noted that, "(s)ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment."  Id. at 185 (quoting Hill v. California, 401 U.S. 797, 804 (1971)).

         Where, as here, the third party has made such an explicit claim, courts have found that acceptance of the claim is objectively reasonable where circumstances offer even modest independent corroboration.  In United States v. Elliot, 50 F. 3d 180 (2d Cir. 1995), for example, the Second Circuit found that officers had reasonably believed that a landlord had the authority to consent to a search of the defendant's room solely on the basis of the landlord's assertion that the room had not been leased.  Although the only corroboration of the landlord's statement was the fact that he had previously consented to searches of un-leased rooms without incident, the Court found that further inquiry was not required.  Id. at 187.  The First Circuit made a similar finding of objective reasonableness in U.S. v. Maeda, 408 F. 3d. 14 (1st Cir. 2005), where reliance on the third party's assertion that she had common authority over the defendant's house was found to be reasonable given the officers' independent knowledge that her car had been parked at the house for several days of their week-long surveillance.  See also U.S. v. Saadeh, 61 F. 3d 510 (7th Cir. 1995) (third party's statement to agents that she maintained control over the premises, in addition to her known relationship with the owner and presence at the door, were sufficient to create apparent authority to consent); Harajli v. Huron Tp., 365 F. 3d 501 (6th Cir. 2004) (police justified in believing the third party's statement that she was a resident in the defendant's home based on the fact that she possessed the garage door opener to the house and used it to gain entry).

         Thus, even if Mr. Alston had lied to the agents about his authority to consent, the search of the defendant's apartment would be validated by the fact that he had apparent authority.  Given the information available to the agents at the time of the search, it was objectively reasonable for them to believe that Alston had the authority necessary to consent.  The agents were aware that Mr. Alston possessed a key, and testified that they understood that the defendant arranged for this himself.  Tr. at 27.  In addition, the agents were aware that the defendant depended on Mr. Alston to handle his rent and other bills while

5

he was out of the country, suggesting that Mr. Alston occupied a position of trust.  Investigator John Ross testified that he understood Mr. Alston to be a "very close friend" of the defendant, and stated that Mr. Alston had described himself as the "custodian" of the apartment while the defendant was overseas.  Tr. at 14 and 28.  Because the agents were independently aware of several facts supporting the probability that Mr. Alston was telling the truth when he said that he had been given express authorization by the defendant to consent to a full search of the apartment, their reliance on his statements and consequent authority to consent to a search were reasonable.

Contrary to the defense's claim, although Mr. Alston's consent expanded the scope of the original search, this was not sufficient reason to doubt Mr. Alston's claim of the defendant's permission.  Defense counsel already raised this issue at the conclusion of the suppression hearing, and the Court rejected it:

> Ms. Whalen:  And then to suddenly have someone say oh, you can search everything, they don't ask why, they don't ask how, they don't say well, let's take the hard top (sic) and the lap –
>
> Court: They're not in the business of discouraging people from giving out consents to search.

Tr. at 73-74.

The Second Circuit has observed that defendants "can, and often do, voluntarily consent to a search, even when it must be clear to them that incriminating evidence will be disclosed." U.S. v. Price, 599 F. 2d 494, 503 (2d Cir. 1979).  Consent to a search by the subject of a criminal investigation would not be "extraordinary", as the defense claims, but, in fact, fairly commonplace.  Given that the defendant had never been asked to consent to a full search by the agents, they had no reason to believe that he would be adverse to such a search.  Tr. at 49.

Because the circumstances known to the agents at the time gave them no reason to doubt Mr. Alson's assertion of permission, their reliance on his authority to consent to the search was objectively reasonable under Rodriquez.  Thus, Mr. Alston not only had actual authority to give third party consent to the search of the defendant's apartment, but also apparent authority.  For these reasons, the government respectfully requests that the defendant's motion to suppress the evidence

6

seized during the search of his apartment on September 30, 2005 be denied.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney

By: _____

Jeffrey H. Knox
Assistant U.S. Attorney

cc: Mildred Whalen, Esq. (By fax and ECF)